# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAN ANTONIO FIRE & POLICE PENSION FUND and FIRE AND POLICE HEALTH CARE FUND, SAN ANTONIO,<br><br>Plaintiffs,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., DAVID H. MURDOCH and C. MICHAEL CARTER,<br><br>Defendants. | No. 1:15-cv-01140-SLR<br><br>CLASS ACTION<br><br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE DOLE INSTITUTIONAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO ALL COMPETING MOTIONS**

Joel Friedlander (Bar No. 3163)
Jeffrey M. Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
**FRIEDLANDER & GORRIS, P.A.**
1201 N. Market Street, Suite 2200
Wilmington, Delaware 19801
(302) 573-3500

*Local Counsel for Proposed Lead Plaintiff the Dole Institutional Investor Group*

Gerald H. Silk
Mark Lebovitch
Katherine M. Sinderson
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400

Vincent R. Cappucci
Jordan A. Cortez
Heather Sertial
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor
New York, New York 10017
(212) 894-7200

*Counsel for Proposed Lead Plaintiff the Dole Institutional Investor Group and Proposed Lead Counsel for the Class*

Dated: February 25, 2016

{FG-W0405113.}

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 4

I.     The Dole Institutional Investor Group Has The Largest Financial Interest ........................ 4

II.    The Dole Institutional Investor Group Satisfies Rule 23's Typicality And
Adequacy Requirements ................................................................................................. 8

III.   The Competing Motions Should Be Denied .................................................................. 10

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page(s)**

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .................................................................................................10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..............................................................................................3, 10

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)................................................................................................................11

*In re Dole Food Co., Inc. S'holder Litig.*,
  C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015) .....................................5, 6

*Levie v. Sears, Roebuck & Co.*,
  496 F. Supp. 2d 944 (N.D. Ill. 2007) ................................................................................ *passim*

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*,
  No. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009) ........................................................8

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015)............................................................................................11

*Vandevelde v. China Natural Gas, Inc.*,
  277 F.R.D. 126 (D. Del. 2011) .................................................................................................8

*In re Vicuron Pharm., Inc. Sec. Litig.*,
  225 F.R.D. 508 (E.D. Pa. 2004)................................................................................................9

**Statutes**

15 U.S.C. § 78u–4(a)(3)(B) ................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995).......................9

**PRELIMINARY STATEMENT**

San Antonio Fire and Police Pension Fund, Fire & Police Health Care Fund, San Antonio (collectively, the "San Antonio F&P Funds"), Proxima Capital Master Fund, Ltd. ("Proxima") and The Arbitrage Fund (collectively, the "Dole Institutional Investor Group") are the presumptive Lead Plaintiff in this litigation by virtue of having sold 3.5 million shares of Dole Food Company, Inc. ("Dole" or the "Company") stock during the Class Period.[1] Because the gravamen of Defendants' fraudulent scheme was to artificially depress the market price of Dole common stock during the Class Period in a fraudulent scheme to take the Company private at well below market price, the "financial interest" in this litigation must be measured by the number of shares the movants sold during the Class Period. The Dole Institutional Investor Group's substantial sales during the Class Period overwhelmingly qualifies it as the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As demonstrated by the following chart, no other movant seeking appointment as Lead Plaintiff in this Action has a financial interest that even approaches the financial interest of the Dole Institutional Investor Group:

| Movant | Dole Shares Sold |
|---|---|
| Dole Institutional Investor Group | 3,571,803 |
| Daniel R. Long[2] | 222,000 |
| Sutton View Capital LLC ("Sutton View") | 80,000 |

---

[1] The Class Period begins on January 2, 2013, the day Defendants began releasing false, negative information intended to artificially depress the price of Dole's common stock, and runs through October 31, 2013. *See* D.I. 1 ¶¶39, 71.  Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Dole Institutional Investor Group's Memorandum of Law in Support of their Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel. *See* D.I. 19.

[2] Includes Daniel R. Long III, the D.R. Long Foundation, and the Daniel R. Long III Revocable Living Trust, dated 9/17/91.

| City of Providence ("Providence") | 26,357 |

Accordingly, the Dole Institutional Investor Group is the statutory presumptive Lead Plaintiff in this Action. The Dole Institutional Investor Group sold *over ten times* the number of Dole shares sold by all other Lead Plaintiff movants *combined*. *See, e.g.*, *In re Allergan Proxy Violation Sec. Litig.*, No. 14-cv-2004-DOC-KES, slip op. at 1-2 (C.D. Cal. May 5, 2015) (ECF No. 57) (measuring financial interest based on number of shares sold in a securities class action on behalf of sellers) (attached hereto as Exhibit A to the Declaration of Joel Friedlander (the "Friedlander Decl.")); *see also* Section I, *infra*.

The Dole Institutional Investor Group also satisfies the typicality and adequacy requirements of Rule 23 and is perfectly situated to represent all Class members. Indeed, the Dole Institutional Investor Group is the only movant to have already demonstrated its adequacy by virtue of the fact that, well before the filing of this motion, it took substantial steps to protect the Class's interests by, among other things: (i) commencing this Action (and filing the only complaint on record); (ii) successfully objecting to the proposed settlement in the related Chancery Court Action to oppose a global release of all potential claims against Defendants, including the federal securities claims asserted in this Action, *see* D.I. 22-4; and (iii) securing a carve-out for all federal securities claims from that global release. *See* D.I. 22-5 ¶15; *see also* Section II, *infra*.

Because the Dole Institutional Investor Group has the largest financial interest in the litigation and has made a *prima facie* showing of its typicality and adequacy, it is entitled to a strong presumption that it is the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once this presumption is triggered, it can only be rebutted upon "***proof***" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class—whether another movant might

somehow better protect the interests of the Class is irrelevant. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (the court's duty once the presumption has been triggered is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate []' job") (alterations in original). No such "proof" exists, and there are no grounds to challenge the Dole Institutional Investor Group's typicality or adequacy.

The competing movants – Daniel R. Long, Sutton View, and Providence – lack the largest financial interest in this case. In a sellers' securities fraud case like this one, an investor's financial interest is driven by the number of shares sold during the Class Period. *See Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 948 (N.D. Ill. 2007) (in a seller case, "any investor who sold (during the class period) before the fraud was revealed incurred injuries because that investor sold at a price that was artificially lower than the investor should have received"). Two movants – Providence and Daniel R. Long – disregard the most straightforward method of assessing financial interest, and present incompatible "loss" methodologies that would require the Court to prematurely wade into the complex question of damage calculations. *See* D.I. 18 at 6; D.I. 14 at 6-7; D.I. 15-2. Both methods are divorced from the facts of this case, and try to force into a sellers' case the jurisprudence developed in the context of traditional purchasers' class actions where the alleged fraud causes artificial inflation, rather deflation, in the price of the subject securities. Accordingly, these methods fail because the nature of the fraud alleged by the Dole Institutional Investor Group in the Complaint filed by the San Antonio P&F Funds dictates that investors' harm (and therefore their financial interest) is directly tied to the total number of shares they sold at deflated prices during the Class Period.

In addition, Providence cannot satisfy the typicality or adequacy requirements of Rule 23 because, as a representative plaintiff in the Chancery Court Action, it placed the claims asserted in this Action at risk and it is subject to unique defenses. Had it not been for members of the Dole Institutional Investor Group's timely Objection, Providence—which continues to serve as a named plaintiff and class representative in the Chancery Court Action—may have released the claims asserted in this Action on behalf of Dole investors. In any event, the Dole Institutional Investor Group has a much larger financial interest in the claims asserted in this Action and does not suffer from the same typicality and adequacy issues impacting Providence. *See* Section III, *infra*.

Accordingly, the Dole Institutional Investor Group respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## ARGUMENT

The PSLRA directs the Court to appoint as Lead Plaintiff the "most adequate plaintiff," which is the "person or group of persons" that is "most capable of adequately representing the interests of class members." 15 U.S.C. §§ 78u-4(a)(3)(B)(i), (iii). The presumptively most adequate plaintiff is the one that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [adequacy and typicality] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The most adequate Plaintiff here is the Dole Institutional Investor Group.

## I.     The Dole Institutional Investor Group Has The Largest Financial Interest

The Dole Institutional Investor Group has the largest financial interest in the relief sought by the Class. The Dole Institutional Investor Group sold over 3.5 million Dole shares during the Class Period, and, consequently, incurred substantial harm as a result of Defendants' conduct. In a "sellers" case like this one, investors are harmed because they are induced to sell their shares at

prices that are artificially lower than the price they should have received, regardless of what the investors paid for the security. *See Levie*, 496 F. Supp. 2d at 948. Here, Defendants made a series of misrepresentations during the Class Period to conceal the true value of the Company in order to enable Defendant Murdoch to buy the Company at substantially below fair value. The true facts concealed by Defendants' misrepresentations were only revealed through the trial and judgment in the Chancery Court Action, long after the Class Period ended, when the Chancery Court held that Defendants had made "false disclosures," "engaged in fraud," and that a "conservative" fair value of the Company was at least $16.24 per share. D.I. 1 ¶¶6-9; *see generally In re Dole Food Co., Inc. Stockholder Litig.*, C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015).

Accordingly, every investor who sold Dole shares during the Class Period – *i.e.*, the period during which Defendants concealed the true value of the Company – was harmed by Defendants' misconduct. That is, because the fraud deprived the Class members of the true value of the shares they sold, an investor's financial interest in the claims against Dole directly correlates to the number of shares it sold during the Class Period. As set forth in the chart above, the Dole Institutional Investor Group sold over ten times the number of shares sold by all other Lead Plaintiff movants combined. In addition, two members of the Dole Institutional Investor Group –Proxima and The Arbitrage Fund – each individually sold more Dole shares than all other Lead Plaintiff movants combined. *See* D.I. 22-1.

Both Daniel R. Long and Providence ask the Court to engage in complicated damages analyses based on damages methodologies imported from traditional securities cases on behalf of purchasers. The jurisprudence of those cases is inapplicable here. Specifically, Daniel R. Long claims that it is "using the methodology mandated by *Dura Pharms., Inc. v. Broudo*, 544 U.S.

336, 338 (2005)" to calculate "losses" of $258,628.04. D.I. 14 at 6-7. But this results-oriented damages model (nominally based upon *Dura*) is inapplicable here. *See Levie*, 496 F. Supp. 2d at 948 (holding that the loss causation analysis from *Dura* in a "traditional purchaser class, where revelation of the truth results in a decrease in stock price," is inapplicable in a seller case).

In a traditional "purchaser" case, class members are harmed when a fraud is disclosed through the revelation of the "relevant truth," or a "corrective disclosure," that causes the price of the securities purchased during the class period to decline. *See id.* Here, however, the members of the Class are "sellers" of Dole shares who were defrauded into selling at an artificially low price, and their harm was incurred at the time of the sale. *See id.* (in a seller case, "any investor who sold (during the class period) before the fraud was revealed incurred injuries because that investor sold at a price that was artificially lower than the investor should have received"). Indeed, in this case, the true facts concealed by Defendants' fraud were only disclosed in the Delaware Chancery Court decision, which was issued long after the Class Period ended and all outstanding Dole shares were acquired by Defendant Murdoch. *See In re Dole Food*, 2015 WL 5052214. As such, it is impossible for Class members to have been harmed by the reaction of the market price of Dole shares due to a "corrective disclosure" as contemplated by *Dura* in a traditional "purchaser" class action, as Dole shares did not even exist when the truth was revealed. *Levie*, 496 F. Supp. 2d at 948. Instead, in this case, all Class members were harmed when they sold their shares during the Class Period because, regardless of what they paid for the shares, the price they would have received would have been higher had the true facts been disclosed. *See id.* Accordingly, even putting aside the factual errors in Daniel R. Long's

purported *Dura* analysis, the analysis is wholly inapplicable to determining the largest financial interest in this case.[3]

Similarly, Providence presents a damages methodology that – without citing *Dura* – incorporates *Dura*'s concept of loss causation in purchaser cases in an attempt to quantify its "losses." D.I. 18 at 6. Although Providence claims to calculate financial interest based upon "the difference between the 'fair value' of Dole shares in question, as determined by the Delaware Chancery Court, and the depressed price Providence obtained on the open market" (D.I. 18 at 6), in actuality, Providence's loss calculation looks to both the purchase and sale price of Dole securities during the Class Period. Such a methodology is only relevant when, in a purchaser case, there is a "corrective disclosure" between the purchase and sale that results in loss causation under *Dura*, making the comparison of the purchase and sale price a meaningful indicator of an investor's compensable harm. *See Levie*, 496 F. Supp. 2d at 948 (investors in a seller case are harmed by selling shares "[r]egardless of the price such an investor paid for the stock" because the price would have been higher but for the fraud). That is not the case here. In fact, the loss calculation proposed by Providence is directly contrary to the holdings of courts to have considered loss causation in sellers' cases. *See id*.

The methods proposed by Providence and Daniel R. Long, although similarly erroneous in their reliance on *Dura* jurisprudence, are actually incompatible in their calculation of damages in this case. This divergence demonstrates why it is premature for the Court to engage in guesswork regarding the quantification and analysis of investors' damages prior to fact and expert discovery. Indeed, the fact that two movants constructed such wildly differing damages

---

[3] For this reason, the cases cited by Daniel R. Long purportedly applying *Dura* at the lead plaintiff stage – all of which were brought on behalf of **purchasers**, not sellers – are inapposite. *Cf.* D.I. 14 at 7 n.4.

methodologies, while providing no rationale for either, demonstrates that the Court cannot rely on them to compare the movants' financial interest in this case. *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (in determining financial interest, courts must select methods that are both "rational and consistently applied").

Accordingly, the Dole Institutional Investor Group has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## II. The Dole Institutional Investor Group Satisfies Rule 23's Typicality And Adequacy Requirements

In addition to possessing the largest financial interest in the relief sought by the Class, the Dole Institutional Investor Group also satisfies the typicality and adequacy requirements of Rule 23. The Dole Institutional Investor Group's claims are typical of the Class's because it seeks the same relief and advances the same legal theories as the Class. *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines Inc.*, No. 08-969, 2009 WL 1811067, at *2 (D. Del. June 18, 2009) (finding "no evidence" of different claims or legal theories arising out of harm incurred as a result of defendant's alleged Exchange Act violations). The Dole Institutional Investor Group likewise will adequately represent the Class because its claims and interests are perfectly aligned with those of the Class, and there is no conflict between the Dole Institutional Investor Group's interests and those of the absent Class members. *See Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011) (finding adequacy element satisfied where "the movant has the ability and incentive to represent the claims of the class vigorously, . . . has obtained adequate counsel, and [] there is [no] conflict between the movant's claims and those asserted on behalf of the class") (internal quotations and citation omitted).

Moreover, the Dole Institutional Investor Group is comprised of sophisticated institutional investors that have demonstrated their commitment to working cohesively as a

group in the prosecution of this Action.[4]   As set forth in its opening motion, the Dole Institutional Investor Group has already taken significant steps to protect class members' rights in this action, including investigating and filing this Action and successfully challenging the proposed settlement in the Chancery Court Action in order to protect the rights of sellers of Dole stock.  *See* D.I. 19 at 8-9.  Indeed, the coordinated efforts of the members of the Dole Institutional Investor Group in initiating this action, and successfully objecting to the Chancery Court Action settlement to preserve investors' federal claims, exemplifies the benefits that Congress envisioned by empowering sophisticated institutional investors with a real financial stake in the litigation to serve as Lead Plaintiffs in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *31-35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730-34 (1995) (explaining that the design of the PSLRA's financial interest provisions was to encourage institutional investors with the largest stakes in the claims in the case to come forward and "benefit shareholders and assist courts by improving the quality of representation in securities class actions").

As a cohesive group of sophisticated institutional investors that has a proven ability to work together to achieve successful litigation outcomes, as well significant resources and experience pursuing litigation and monitoring counsel, the Dole Institutional Investor Group is the quintessential Lead Plaintiff under the PSLRA.  *See In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered

---

[4] Indeed, the Dole Institutional Investor Group is comprised of sophisticated financial institutions with ample resources and experience to lead this litigation as follows:  (i) the San Antonio F&P Funds, public pension systems with assets under management in excess of $3 billion; (ii) Proxima, a New York-based institutional investor that, prior to the Dole merger, owned in excess of 2% of the publicly held shares of Dole common stock; and (iii) The Arbitrage Fund, a New York-based publicly traded mutual fund (NASDAQ: ARBDX ) that has assets under management in excess of over $1.97 billion.

preferred lead plaintiffs . . . [as] the PSLRA sought 'to increase the likelihood that institutional investors will serve as lead plaintiffs.'") (citation omitted).

The Dole Institutional Investor Group has also demonstrated its adequacy through its selection of Bernstein Litowitz and Entwistle & Cappucci as Lead Counsel to represent the Class. As detailed in the Dole Institutional Investor Group's opening brief, Bernstein Litowitz and Entwistle & Cappucci are among the preeminent securities class action law firms in the country, with decades of experience successfully litigating complex securities class actions nationwide. *See* D.I. 19 at 12-15. Indeed, working together, Bernstein Litowitz and Entwistle & Cappucci have obtained numerous significant investor recoveries. *See id*. Moreover, as part of their formal retention of Bernstein Litowitz and Entwistle & Cappucci, each member of the Dole Institutional Investor Group negotiated a reasonable fee agreement with counsel to promote the ardent prosecution of this litigation in an efficient and cost-effective manner. *See id*. at 12; *see also In re Cendant*, 264 F.3d at 265 ("one of the best ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel").

Accordingly, because the Dole Institutional Investor Group has the largest financial interest in the relief sought by the Class and otherwise satisfies Rule 23, the Court should appoint it as Lead Plaintiff.

## III. The Competing Motions Should Be Denied

Because the Dole Institutional Investor Group has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, the remaining competing motions should be denied. *See In re Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest [financial interest] satisfies the typicality and adequacy requirements, he is entitled to lead

plaintiff status."). In addition to lacking the largest financial interest by a significant margin, Providence's motion should also be denied on the separate and independent grounds that, unlike the Dole Institutional Investor Group, it is subject to unique defenses given its prior representation of Dole investors in the Chancery Court Action. As set forth below, there is substantial evidence that undermines Providence's adequacy to serve as Lead Plaintiff and demonstrates that Providence will face serious unique challenges that threaten to derail the prosecution of this Action.

First, despite serving as a representative of other Dole investors for over two years, Providence never sought to assert the claims of the Dole sellers that comprise the Class in this Action, and, in fact, put the Class's claims at risk. It is well-settled that a Lead Plaintiff has a fiduciary responsibility to all Class members. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). Given the importance of the Lead Plaintiff's fiduciary status, courts routinely find inadequate proposed class representatives that fail to act in the best interests of the class they seek to represent. *See, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 643 (N.D. Cal. 2015) (rejected a proposed class representative that "demonstrated they are generally inadequate to represent the class because the choices they have already made in this case vis-a-vis the class").

While serving as named plaintiff and class representative in the Chancery Court Action, Providence did not take any action to protect the federal securities law seller claims that are asserted in this Action and, in fact, subjected those claims to the risk of being extinguished and finally released without any consideration. Specifically, the overbroad release that Providence negotiated after settling the Chancery Court Action with Defendants did not carve out the valuable securities fraud claims belonging to sellers of Dole stock during the Class Period.

Instead, the original settlement stipulation that Providence endorsed released "all claims, demands, losses, rights, and causes of action of any nature whatsoever" that "arise out of or relate to" the going private transaction at the heart of this Action. Friedlander Decl., Ex. B. Whether or not Providence intended to release the federal securities claims of Dole investors, there can be no question that Defendants here would have argued that these claims were released by Providence's settlement. It was only when members of the Dole Institutional Investor Group formally objected and sought discovery regarding the settlement that the parties in the Chancery Court Action carved out and excluded the claims asserted here from the scope of the release. *See* D.I. 22-5. Had it not been for the Dole Institutional Investor Group, Providence may have released the valuable claims asserted here, and the Class of sellers in this action would have been left without a means of recovery.

Second, Defendants may challenge whether Providence is typical of the Class given its status as a class representative in the Chancery Court Action. In particular, Providence's access to confidential, non-public discovery in the Chancery Court Action places Providence in a unique position relative to every other member of the Class. Among other things, Defendants could argue that, unlike the other members of the Class, Providence had access to significant non-public information more than two years before the San Antonio F&P Funds filed their Complaint in this Action that uniquely subject Providence's claims to a challenge under the governing two-year statute of limitations.[5] The fact that Providence is uniquely subject to Defendants' statute of limitations defense renders Providence atypical of the Class, and would shift the focus of the litigation from Defendants' conduct to the adequacy and typicality of the

---

[5] Moreover, throughout the many months it spent overseeing the prosecution of the Chancery Court Action, Providence neither executed an agreement with Defendants to toll the statute of limitations on the federal securities claims asserted in this Action, nor did it file a complaint asserting those claims.

lead plaintiff. Conversely, the Dole Institutional Investor Group and other Class members that were not parties to the Chancery Court Action did not have any special access to non-public information, and could not have discovered that Defendants intentionally perpetrated a fraud until the Chancery Court issued its Post-Trial Opinion on August 27, 2015.

In sum, the Dole Institutional Investor Group has the largest financial interest in the outcome of this litigation, satisfies Rule 23's typicality and adequacy requirements, and is not subject to any potential conflicts or unique defenses.

## CONCLUSION

For the reasons discussed above, the Dole Institutional Investor Group respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of Bernstein Litowitz and Entwistle & Cappucci as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

DATED: February 25, 2016

*/s/ Joel Friedlander*
Joel Friedlander (Bar No. 3163)
Jeffrey M. Gorris (Bar No. 5012)
Christopher Foulds (Bar No. 5169)
**FRIEDLANDER & GORRIS, P.A.**
1201 N. Market Street, Suite 2200
Wilmington, Delaware 19801
(302) 573-3500
jfriedlander@friedlandergorris.com
jgorris@friedlandergorris.com
cfoulds@friedlandergorris.com

*Local Counsel for Proposed Lead Plaintiff the Dole Institutional Investor Group*

Gerald H. Silk
Mark Lebovitch
Katherine M. Sinderson
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 554-1400
jerry@blbglaw.com
markl@blbglaw.com
katherinem@blbglaw.com

Vincent R. Cappucci
Jordan A. Cortez
Heather Sertial
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor
New York, New York 10017
(212) 894-7200
vcappucci@entwistle-law.com
jcortez@entwistle-law.com
hsertial@entwistle-law.com

*Counsel for Proposed Lead Plaintiff the Dole Institutional Investor Group and Proposed Lead Counsel for the Class*

{FG-W0405113.}        14