# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND and FIRE AND POLICE HEALTH CARE FUND, SAN ANTONIO, <br><br> Plaintiffs, <br><br> v. <br><br> DOLE FOOD COMPANY, INC., DAVID H. MURDOCK and C. MICHAEL CARTER, <br><br> Defendants. | : <br> : Case No. 1:15-cv-01140-SLR <br> : <br> : <u>CLASS ACTION</u> <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## THE CITY OF PROVIDENCE, RHODE ISLAND'S ANSWERING BRIEF IN OPPOSITION TO COMPETING MOTIONS FOR <u>APPOINTMENT AS LEAD PLAINTIFF AND SELECTION OF LEAD COUNSEL</u>

**MOTLEY RICE LLC**
Gregg S. Levin
James M. Hughes
Josh Littlejohn
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email:  glevin@motleyrice.com
         jhughes@motleyrice.com
         jlittlejohn@motleyrice.com

*Counsel for Proposed Lead Plaintiff the City of Providence and [Proposed] Lead Counsel for the Class*

**ROSENTHAL, MONHAIT & GODDESS, P.A.**
Jessica Zeldin (Del. Bar No. 3558)
P. Bradford deLeeuw (Del. Bar No. 3569)
919 N. Market Street, Suite 140
Wilmington, DE  19899
Telephone: (302) 656-4433
Facsimile: (302) 658-7567
Email: bdeleeuw@rmgglaw.com

*Liaison Counsel for Proposed Lead Plaintiff the City of Providence and [Proposed] Liaison Counsel for the Class*

Dated: February 25, 2016

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................... 1
II. ARGUMENT .......................................................................................................................... 1
    A.    Providence Has The Largest Financial Interest In The Relief Sought By Class And Is The Only Movant That Satisfies The Requirements Of Rule 23 ........................... 1
    B.    The PSLRA Envisions That Sophisticated Institutional Investors Litigate Securities Fraud Class Actions ..................................................................................................... 7
III. CONCLUSION ...................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Abrahamson v. Fleschner*,
 568 F.2d 862 (2d Cir. 1977)...................................................................................................... 4

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
 222 F.3d 52 (2d Cir. 2000)......................................................................................................... 7

*Bensley v. FalconStor Software, Inc.*,
 277 F.R.D. 231 (E.D.N.Y. 2011) ............................................................................................... 6

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005)................................................................................................................ 5, 6

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
 903 F.2d 176 (2d Cir. 1990)....................................................................................................... 7

*Gordon v. Sonar Capital Mgmt. LLC*,
 92 F. Supp. 3d 193 (S.D.N.Y. Mar. 19, 2015) .......................................................................... 5

*In re Bally Total Fitness Securities Litigation*,
 No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ...................................................... 7

*In re BP, PLC Sec. Litig.*,
 758 F. Supp. 2d 428 (S.D. Tex. 2010) .................................................................................. 8, 9

*In re Dole Food Co., Inc., Stockholder Litig.*,
 C.A. No. 8703-VCL (Del. Ch. 2015)..................................................................................... 3, 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009)......................................................................................................... 7

*In re Refco Inc. Sec. Litig.*,
 No. 08–cv–3065, 2013 WL 4078410 (S.D.N.Y. Aug. 2, 2013) ............................................... 5

*In re Vicuron Pharm., Inc. Sec. Litig.*,
 225 F.R.D. 508 (E.D. Pa. 2004)................................................................................................. 9

*In Re Wilmington Trust Securities Litigation*,
 C.A. 1:10-cv-00990-SLR-SRF (D. Del., Feb. 14, 2011) .......................................................... 5

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
 676 F. Supp. 486 (S.D.N.Y. 1987) ............................................................................................ 4

*Porzio v. Overseas Shipholding Grp.*,
 No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ................................................. 6

*Weisz v. Calpine Corp.*,
 No. C 02-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002)............................. 9

**I.      INTRODUCTION**

The City of Providence, Rhode Island (the "City" or "Providence") respectfully submits this answering brief in opposition to the competing motions of the Dole Institutional Investor Group,[1] the Dole Investor Group,[2] and Sutton View Capital, LLC ("Sutton View") (D.I. 13, 16, 21).

**II.     ARGUMENT**

    **A.     Providence Has The Largest Financial Interest In The Relief Sought By Class And Is The Only Movant That Satisfies The Requirements Of Rule 23**

As detailed in the City's opening brief, Providence suffered losses of $97,734.16 in connection with its sales of Dole shares during the Class Period. *See* D.I. 18 at 1; 20-2. Critically, Providence is the only movant that incurred a legally cognizable loss, because it is the only movant that acquired Dole stock before any alleged false statements artificially depressed the price of Dole stock, and sold after such false statements. Neither the Dole Institutional Investor Group nor Sutton View Capital, LLC can benefit from a presumption that it is the movant with the largest financial interest in the relief sought by the Class, because each of them failed to allege that they suffered *any* loss. In fact, they *profited* from trading in Dole stock during the Class Period. The other movant, the Dole Investor Group, suffered losses unrelated to the fraudulent conduct alleged in this suit, as a result of trading in and out of the stock over a period of several weeks. All three of these movants are atypical of the Class and are susceptible to unique defenses that would make them poor Class representatives. Thus, Providence is the movant with "the largest financial

---

[1] The "Dole Institutional Investor Group" comprises San Antonio Fire and Police Pension Fund; Fire & Police Health Care Fund, San Antonio (the "San Antonio Funds"); Proxima Capital Master Fund, Ltd., and The Arbitrage Fund.

[2] The "Dole Investor Group" comprises Daniel R. Long III, the D.R. Long Foundation, and the Daniel R. Long III Revocable Living Trust, dated 9/17/91.

1

interest" in the relief sought by Class that also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and should be appointed Lead Plaintiff.

### 1. The Dole Institutional Investor Group and Sutton View fail to allege that they suffered any loss, and could not adequately represent the Class.

To be appointed lead plaintiff, a movant must show that it has the largest financial interest in the relief sought by the class. The movant with the largest financial interest is typically the movant that has experienced the greatest financial loss attributable to the fraud. Here, two movants, the Dole Institutional Investor Group and Sutton View, have failed to allege that they suffered any loss. The Dole Institutional Investor Group argues that it should be appointed as lead plaintiff merely because it "sold 3.5 million Dole shares during the Class Period." D.I. 19 at 3, 7. Similarly, Sutton View argues that it should be appointed lead plaintiff because it "sold over 80,000 shares during the Class Period." D.I. 23 at 5 (citing Finger Decl., Ex. B). Because neither of these movants allege a loss, neither of them is a proper lead plaintiff.

The reason for these omissions is simple. An examination of the data the Dole Institutional Investor Group and Sutton View provided shows that each profited from trading Dole stock during the Class Period. Because both movants experienced a ***net financial gain***, their "losses" are not typical of the Class and they could not adequately represent the Class as they would be subject to the unique defense that they suffered no harm.

**Proxima was a net financial gainer during the Class Period.** According to the data provided by the Dole Institutional Investor Group, Proxima ***bought*** 1,304,033 shares of Dole stock during the Class Period and sold the same number of shares during the Class Period. D.I. 22-1 at 7. All of Proxima's purchases and sales occurred after Dole's stock price was depressed as a result of Defendants' fraudulent scheme. Therefore, on every purchase, Proxima paid a lower price than it otherwise would have paid absent artificial deflation caused by Defendants' fraud, and on every

sale it sold at a higher price than it otherwise would have received absent Defendants' fraud. Therefore, Proxima benefited and was harmed in equal measure by the fraud. Nevertheless, by selling each share it bought during the Class Period at a higher price than it paid for it, Proxima managed to turn a multi-million dollar profit.

**The Arbitrage Fund was a net financial gainer and net purchaser during the Class Period.** According to the data provided by the Dole Institutional Investor Group, the Arbitrage Fund ***bought*** 2,261,249 shares of Dole stock beginning on August 12, 2013, and sold all 2,261,249 shares by October 16, 2013. D.I 22-1 at 9. The Arbitrage fund then bought 231,404 shares on October 31, 2013, the last day of the Class Period, which it exchanged in the take-private transaction.[3] Because it bought more shares than it sold, the Arbitrage Fund was a net purchaser during the Class Period. Like Proxima, all of the Arbitrage Fund's purchases and sales occurred after Dole's stock price was allegedly depressed due to Defendants' fraud. Dole Institutional Investor Group. By trading in and out of Dole stock, the Arbitrage Fund made a profit of approximately $400,000.

Unlike Proxima and the Arbitrage Fund, the San Antonio Funds may have incurred legally cognizable losses. But these losses are much smaller than Providence's losses, and therefore the San Antonio Funds do not have the "largest financial interest" in the relief sought by the Class. Collectively, the Dole Institutional Investor Group made large profits from intra-Class Period

---

[3] Since the Arbitrage Fund held these shares at the conclusion of the Class Period, it received $13.50 per share in the Murdoch's take-private transaction (a modest "loss" of about $8,631). But, as a result of its October 31, 2013 purchase, the Arbitrage Fund also is a class member in *In re Dole Food Co., Inc., Stockholder Litig.*, C.A. No. 8703-VCL (Del. Ch. 2015) (the "Chancery Action"). It is entitled to a pro rata share of the settlement proceeds in the Chancery Action. So long as its claim exceeds $8,631, which it undoubtedly will, the Arbitrage Fund will profit from its October 31, 2013 purchase.

3

trades in Dole stock. It was not injured as a result of the alleged fraudulent conduct and does not stand to recover any damages; therefore it has **no** financial interest in the relief sought by the class.

**Sutton View's was a net financial gainer and a net purchaser during the Class Period.**

Like Dole Institutional Investor Group, Sutton View both bought and sold Dole stock during the Class Period. D.I. 23-1 at 9-11. Therefore, it both profited from and was harmed by the alleged fraud in equal measure. Like the Arbitrage Fund, Sutton View was an in-and-out trader. For example, in Account 1, it: **bought** 10,000 shares of Dole stock on May 1, 2013, and sold all 10,000 shares the next day on May 2, 2013. Sutton View's lowest sale price on those transactions exceeded its highest purchase price, so it realized a profit, not a loss. Over the entire Class Period, Sutton View turned a profit by trading in and out of Dole stock. Like the Arbitrage Fund, Sutton View was also a net purchaser during the Class Period.[4]

In this context, The Dole Institutional Investor Group's and Sutton View's profits cannot be ignored when determining which movant has the largest financial interest in the relief sought in this action. *See, e.g.*, *Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) ("This is not to say, however, that a plaintiff may recover for losses, but ignore his profits, where both result from a single wrong."); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 488-89 (S.D.N.Y. 1987) ("Under most circumstances, it is clear that a plaintiff both injured and enriched by illegal activity cannot choose to recover for his injuries yet retain his windfall."); *In re Refco Inc. Sec. Litig.*, No. 08–cv–3065, 2013 WL 4078410, at *2 (S.D.N.Y. Aug. 2, 2013) ("As a general

---

[4] At the end of the Class Period, Sutton View still held 10,000 shares.

4

rule, plaintiffs cannot claim damages where the same fraud alleged to be the cause of a loss also permitted a countervailing gain.").[5]

This principle is also relevant in considering whether a putative lead plaintiff can adequately represent a class. *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. Mar. 19, 2015). In *Gordan v. Sonar Capital Mgmt. LLC*, the plaintiff, like Plaintiffs in the present case, alleged that the defendants had harmed the seller class by artificially depressing the price of the company's shares. Judge Rakoff concluded that a plaintiff who had bought and sold the same number of shares during the class period could not adequately represent the injured class because it would be subject to unique defenses. Accordingly, the Dole Institutional Investor Group's and Sutton View's motions for appointment as lead plaintiff should be denied.

### 2. The Dole Investor Group's losses are atypical and it could not adequately represent the Class.

The Dole Investor Group claims losses of approximately $258,628.04, which it states were calculated "using the methodology mandated by *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), and approved and recognized as the appropriate method for calculating losses in various jurisdictions around the country." D.I. 14 at 6. The actual methodology the Dole Investor Group used is unclear because it did not disclose it in its motion papers. Unlike Providence, the Dole Investor Group bought all of its shares months after the Defendants began their fraudulent scheme,

---

[5] Indeed, counsel for the Dole Institutional Investor Group has previously argued in this Court that the issue of whether or not a movant realized a net gain on transactions in a company's stock is "the determinative metric in considering a Lead Plaintiff's typicality or adequacy." *See In Re Wilmington Trust Sec. Litig.*, C.A. 1:10-cv-00990-SLR-SRF (D. Del., Feb. 14, 2011), D.I. 22, Reply Brief in Further Support of the Motion of the Institutional Investor Group for Appointment as Lead Plaintiff, Approval of its Selection of Co-Lead Counsel and Consolidation of All Related Actions, at p. 4 n. 5 (attached hereto as Exhibit A).

5

when the price of Dole stock was already artificially depressed.  Therefore, it is far from clear that the Dole Investor Group's claimed losses resulting from in-and-out trading are recoverable.

In *Dura*, the Supreme Court held that plaintiffs can recover in fraud-on-the-market cases only if a specific loss was proximately caused by a defendant's misrepresentations.  554 U.S. at 344-47.  Courts have recognized at the lead plaintiff stage that losses caused by in and out trading in a security are problematic.  *See, e.g.*, *Kops v. NVE Corp.,* 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) (refusing to credit competing plaintiff's in-and-out losses, despite the allegation that a partial disclosure occurred before some of those sales); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 235-42 (E.D.N.Y. 2011) (denying lead plaintiff status to a so-called "in-and-out" trader, where stock was arguably sold before the company's disclosure of fraud).

Unlike Providence, the Dole Investor Group bought all of its shares months after the Defendants began their fraudulent scheme, when the price of Dole stock was already artificially depressed.  Moreover, all of the Dole Investor Group's members were "in-and-out traders" that purchased and sold Dole securities over short periods of time.  *See* D.I. 15-1.  Therefore, it is far from clear that the Dole Investor Group's claimed losses resulting from in-and-out trading are recoverable.

The Dole Investor Group's trading pattern also subject them to unique defenses that make them atypical and inadequate lead plaintiffs.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (noting adequacy is not met if the class representative is "subject to any 'unique defenses which threaten to become the focus of the litigation'") (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)); *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990)  ("Regardless of whether the

6

issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.").

*In re Bally Total Fitness Securities Litigation*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005), demonstrates why in-and-out traders – like the Dole Investor Group – are likely to be subject to unique defenses that would distract from the claims of the rest of the Class:

> Genesee [the movant] asserts that it will be able to establish loss causation and cites case law for the proposition that in-and-out traders can prove loss causation. The PSLRA, though, provides that we ask simply whether Genesee is likely to be "subject to" the unique defense regarding loss causation; we do not have to determine that the defense is likely to succeed. ***And it does appear that Genesee would have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements***. Our concern is that the time and attention Genesee would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class. ***This would not be the case with the other prospective lead plaintiffs***. Accordingly, we find that Genesee's status as presumptive lead plaintiff has been rebutted.

(emphases added).

While the Dole Investor Group allegedly sold Dole securities later in the Class Period and suffered losses, Providence purchased the Company's securities *before* there was *any* deflation and then sold as the stock price was trending downward as a result of the fraud. It is axiomatic that it is "particularly important at this early stage of the case to avoid prejudicing the claims of absent class members through the appointment of a lead plaintiff who cannot fully and fairly represent them." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 438 (S.D. Tex. 2010). Because the Dole Investor Group's members cannot satisfy this, their motion should be denied.

### B. The PSLRA Envisions That Sophisticated Institutional Investors Litigate Securities Fraud Class Actions

In addition to being the only movant to satisfy the PSLRA's requirements and not subject unique defenses that preclude appointment as a lead plaintiff, the City is an experienced fiduciary

7

with significant experience in litigating complex securities fraud actions. *See* D.I. 18 at 1-2; 20-1. The Dole Investor Group's members cannot make similar claims. Indeed, in enacting the PSLRA, Congress explicitly acknowledged its preference for institutional investors such as Providence to act as lead plaintiffs. *See In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (noting that "[u]nder the PSLRA, institutional investors are considered preferred lead plaintiffs" and that "the PSLRA sought 'to increase the likelihood that institutional investors will serve as lead plaintiffs.'" (*citing* H.R. CONF. REP. NOO. 104–369, 1995 U.S.C.C.A.N. at 730-344)). Accordingly, if the Court credits the Dole Investor Group's arguments, the Court could appoint Providence and the Dole Investor Group as co-lead plaintiffs to ensure the interests of all members of the Class are represented.[6]

Finally, that Providence was involved in a previous related shareholder action, the Chancery Action, further bolsters the City's adequacy to serve as a lead plaintiff here. Along with its co-lead plaintiffs, Providence litigated the action through over a year of discovery and motion practice, nine days of trial, and significant pre- and post-trial briefing. Such diligence is precisely what is required in a lead plaintiff.

## III.  CONCLUSION

For all the above reasons, and for the reasons presented in Providence's opening Lead Plaintiff submission, the Court should appoint the City as Lead Plaintiff, Motley Rice LLC as Lead Counsel, and Rosenthal, Monhait & Goddess, P.A. as Liaison Counsel.

---

[6] Numerous courts "have used their discretion to make an institutional investor co[-]lead plaintiff with an individual in order to provide the added benefits of institutional investors." *In re BP, Plc Sec. Litig.*, 758 F. Supp. 2d 428, at 441 (S.D. Tex. 2010) (citing *Weisz v. Calpine Corp.*, No. C 02-1200, 2002 U.S. Dist. LEXIS 27831, at *8 (N.D. Cal. Aug. 19, 2002) ("The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action")).

Dated: February 25, 2016

Respectfully submitted,

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE # 3569)
919 N. Market Street, Suite 140
Wilmington, DE 19899
Telephone: (302) 656-4433
Facsimile: (302) 658-7567
Email: bdeleeuw@rmgglaw.com

*Liaison Counsel for Proposed Lead Plaintiff the City of Providence and [Proposed] Liaison Counsel for the Class*

**MOTLEY RICE LLC**
Gregg S. Levin
James M. Hughes
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email: glevin@motleyrice.com
    jhughes@motleyrice.com
    jlittlejohn@motleyrice.com

*Counsel for Proposed Lead Plaintiff the City of Providence and [Proposed] Lead Counsel for the Class*

9