# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND and FIRE AND POLICE HEALTH CARE FUND, SAN ANTONIO,<br><br>               Plaintiffs,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., DAVID H. MURDOCK and C. MICHAEL CARTER,<br><br>               Defendants. | Civil Action No. 1:15-cv-01140-SLR |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE DOLE INVESTOR GROUP TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**
                                                           RIGRODSKY & LONG, P.A.
                                                           Seth D. Rigrodsky (#3147)
                                                           Brian D. Long (#4347)
                                                           2 Righter Parkway, Suite 120
                                                           Wilmington, DE 19803
                                                           Tel: (302) 295-5310
                                                           Fax: (302) 295-5310
                                                           Email: BDL@rl-legal.com

                                                           *Counsel for the Dole Investor Group and*
                                                           *Proposed Liaison Counsel for the Class*

                                                           Charles J. Piven
                                                           Yelena Trepetin
                                                           BROWER PIVEN
                                                             A Professional Corporation
                                                           1925 Old Valley Road
                                                           Stevenson, MD 21153
                                                           Telephone: (410) 332-0030
                                                           Facsimile:  (410) 685-1300
                                                           Email: piven@browerpiven.com
                                                           Email: trepetin@browerpiven.com

                                                           *Counsel for the Dole Investor Group and*
                                                           *Proposed Lead Counsel for the Class*

March 7, 2016

# TABLE OF CONTENTS

    **Page**

PRELIMINARY STATEMENT ...........................………………………………………1

LEGAL ARGUMENT..........………………………………………………………………1

I.    THE DOLE INVESTOR GROUP IS THE PRESUMPTIVE
     LEAD PLAINTIFF…………………………………………………….......................1

    A.    The Dole Investor Group Has the Largest Financial Interest ...........……………1

    B.    The Dole Investor Group Satisfies the Requirements of Rule 23.................……3

II.   SAN ANTONIO INVESTORS AND SUTTON ARE NOT TYPICAL AND
     ARE SUBJECT TO DISABLING UNIQUE DEFENSES ………………………… 6

III.  SAN ANTONIO INVESTORS IS NOT A
     PROPER PSLRA GROUP…………………………………… ....................................9

IV.  THE COURT SHOULD APPROVE THE DOLE INVESTOR
     GROUP'S CHOICE OF COUNSEL……………………………………......................10

CONCLUSION……………………………………………………………......................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.,* No. 07-07097,
    2008 U.S. Dist. LEXIS 103148 (C.D. Cal. Nov. 13, 2008)……………………………7

*In re Bally Total Fitness Sec. Litig.*, No. 04-3530,
    2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)…………………………………..5

*Basile v. Valeant Pharms. Int'l, Inc.*,
    No. 14-2004 (C.D. Cal.)…………………………………………………………………..8, 9

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)……………………………………………………………...5, 6

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011)…………………………………………………………..5

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010)……………………………………………………..5

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002)……………………………………………………………...2, 9

*Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, No. 07-2536,
    2009 U.S. Dist. LEXIS 71653 (C.D. Cal. Aug. 12, 2009)………………………………..6

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002)…………………………………………………………4

*In re Fannie Mae Sec. Litig.*,
    355 F. Supp. 2d 261 (D.D.C. 2005)………………………………………………………4

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)………………………………………………………………..5

*Kops v. NVE Corp.*, No. 06-574,
    2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006)…………………………3, 5, 7, 8

*In re K-V Pharm. Co. Secs. Litig.*, No. 11-01816,
    2012 U.S. Dist. LEXIS 62161 (E.D. Mo. May 3, 2012)…………………………………..6

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004)…………………………………………………………6

*Levie v. Sears Roebuck & Co.*,
 496 F. Supp. 2d 944 (N.D. Ill. 2007)……………………………………………..9

*Lyons v. Scitex Corp.*,
 987 F. Supp. 271 (S.D.N.Y. 1997)…………………………………………………6

*In re Recoton Corp. Secs. Litig.*,
 248 F.R.D. 606 (M.D. Fla. 2006)…………………………………………………...6

*Sofran v. LaBranche & Co.*,
 220 F.R.D. 398 (S.D.N.Y. 2004)……………………………………………………4

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
 552 U.S. 148 (2008)…………………………………………………………………2

*Tanne v. Autobytel, Inc.*,
 226 F.R.D. 659 (C.D. Cal. 2005)…………………………………………………...9

*In re Telxon Corp. Sec. Litig.*,
 67 F. Supp. 2d 803 (N.D. Ohio 1999)…………………………………………...10

*In re Tronox, Inc.*,
 262 F.R.D. 338 (S.D.N.Y. 2009)……………………………………………………6

## **Statutes and Rules**

15 U.S.C. §78u-4……………………………………………………………. *passim*

Fed. R. Civ. P. 23……………………………………………………………. *passim*

## PRELIMINARY STATEMENT

The Dole Investor Group, comprised of Mr. Long, the D.R. Long Foundation (of which Mr. Long is President), and the Daniel R. Long III Revocable Living Trust, dated 9/17/91 (of which Mr. Long is both grantor and Trustee),[1] submits this memorandum in further support of its motion to: (1) appoint the Dole Investor Group as Lead Plaintiff; (2) approve its selection of Brower Piven as Lead Counsel for the Class and Rigrodsky & Long as Liaison Counsel for the Class; and (3) in reply to the oppositions of the other competing lead plaintiff movants.[2]

## LEGAL ARGUMENT

### I. THE DOLE INVESTOR GROUP IS THE PRESUMPTIVE LEAD PLAINTIFF

#### A. The Dole Investor Group Has the Largest Financial Interest

The Dole Investor Group possesses the "largest financial interest in the relief sought" among the lead plaintiff movants and "otherwise satisfies the requirements of Rule 23." Thus, the Court shall appoint the Dole Investor Group as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii).

As demonstrated by Exhibit B to the Long Declaration, the Dole Investor Group has losses, calculated most conservatively, of approximately $258,628.00. Dole Opp. at 3-4. Regardless of the methodology employed for calculating losses, no competing movant even claims to have an interest larger than that of the Dole Investor Group in the outcome of this Action arising from Defendants' fraud.

---

[1] All terms defined in the Memorandum of Law In Support Of The Motion Of The Dole Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel ("Dole Memo"; D.I. No. 14) and the Memorandum In Further Support Of The Motion Of The Dole Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiffs' Choice Of Counsel ("Dole Opp."; D.I. No. 26) shall have the same meanings herein.

[2] On February 8, 2016, four movants each timely filed motions for consolidation and appointment as lead plaintiff and lead counsel, including: (1) the Dole Investor Group; (2) San Antonio Investors; (3) Providence; and (4) Sutton. *See* D.I. Nos. 13-23. On February 25, 2016, all movants filed oppositions to the competing motions. D.I. Nos. 26, 27 ("San Antonio Opp."), 29 ("Providence Opp."); 30 ("Sutton Opp.").

As explained in the Dole Opp., the only other movant that claims any economic loss is Providence, which claims a loss of $97,734.16, or approximately one-third of the stake of the Dole Investor Group. *Id.* at 3. However, Providence failed to disclose the respective purchase prices for the Dole shares it acquired prior to the Class Period that it claims were damaged. This information is indispensable for Providence to make a *prima facie* showing that it suffered any economic loss at all, let alone the magnitude of that loss. Dole Opp. at 3-4.

It is axiomatic that, to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must demonstrate an "economic loss." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). Without providing the Court with purchase prices, Providence has failed to provide evidence necessary for the Court to make the required threshold determination, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc), that Providence satisfies the requirements of Rule 23. *Cf. In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements [of Rule 23(a)], he becomes the presumptively most adequate plaintiff."). Similarly, pursuant to 15 U.S.C. §78u-4(e) (the "PSLRA Damage Cap"), for seller classes, "the award of damages . . . shall not exceed the difference between the purchase [price]. . . and the mean trading price . . . during the 90-day period beginning on the date on which the information correcting the misstatement or omission … is disseminated to the market." Thus, without evidence of its purchase prices, there is no way to demonstrate whether Providence's purported financial interest is eliminated or reduced by the PSLRA Damage Cap.

Nevertheless, assuming, *arguendo*, that Providence's purchase prices are somehow irrelevant due to the unique posture of this Action, Providence's purported interest in the relief sought in this Action is a mere fraction of that possessed by the Dole Investor Group such that it

is not the "most adequate plaintiff." Dole Opp. at 3-4, 19 & n.3; *see also* San Antonio Opp. at 4, 11-13 (arguing that Providence cannot satisfy the typicality or adequacy requirements of Rule 23). Moreover, employing the methodology Providence used to calculate its losses, the Dole Investor Group's financial interest would be approximately $1.4 million, or more than 14 times larger than that of Providence. Dole Opp. at 4[3]; *see also Kops v. NVE Corp.*, No. 06-574, 2006 U.S. Dist. LEXIS 49713, at *9 (D. Minn. July 17, 2006) ("The statute provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case"); *id.* ("Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.") (internal quotation marks omitted).

The other competing movants for appointment as lead plaintiff, Sutton and San Antonio Investors, have no economic loss because they profited from their Class Period Dole transactions, and, thus, possess no financial interest in the relief sought by the Class. *See* Dole Opp. at 6-14. The Dole Investor Group possesses by far the largest financial interest in the relief sought by the Class among the competing lead plaintiff movants.

### B. The Dole Investor Group Satisfies the Requirements of Rule 23

The Dole Investor Group "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). The Dole Investor Group's claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because its claims arise from the same facts and course of conduct by Defendants that give rise to the other class members' claims and are based on identical legal theories. Dole Memo at 7-8; Dole Opp. at 4-5. Further, each member of the Dole Investor Group, through Mr. Long, has affirmatively demonstrated its/his adequacy

---

[3] Moreover, Providence is expected to receive a recovery associated with 16,000 of its shares in the Court of Chancery Action, and cannot recover for those again. Dole Opp. at 4 n.3.

3

through the sworn PSLRA-mandated certifications. Dole Opp. at 5.

Furthermore, the presumption in favor of the movant with the "largest financial interest" may be rebutted "only upon proof" by a member of the purported plaintiff class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class or that it is subject to unique defenses that render it incapable of adequately representing the class." *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439 (S.D. Tex. 2002). Thus, competing movants assailing the adequacy of a presumptive lead plaintiff must do so with proof, not theory or speculation. *Id.* at 448 n.18 (alleged "unsupported" or "generic" claims cannot rebut the most adequate plaintiff presumption under the PSLRA); *see also Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (rejecting attempts to rebut lead plaintiff presumption where opponent provided "no evidence of any antagonism" or "proof" that the lead plaintiff was atypical or inadequate, holding that "[w]ithout such proof, the citations to other cases provides only speculation as to such a possibility."); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting as "speculative and hypothetical" claims regarding potential conflicts between the presumptive lead plaintiff and the class where movants "offer no proof" how such potential conflicts might affect the presumptive lead plaintiff's "capacity to fairly and adequately represent the class"). Here, none of the movants have offered any proof that the Dole Investor Group is atypical, inadequate, or subject to a cognizable unique defense.

While conceding that the Dole Investor Group sold significantly more Dole shares in the Class Period and that it suffered losses, Providence's only arguments against the Dole Investor Group is that the Dole Investor Group "suffered losses unrelated to the fraudulent conduct alleged in this suit, as a result of trading in and out of the stock over a period of several weeks" and it is "not clear whether the claimed losses from in-and-out trading are recoverable."

4

Providence Opp. at 1, 6-7. Providence's arguments are unfounded and not supported by the cases on which it relies.[4] Unlike San Antonio Investors and Sutton,[5] the Dole Investor Group is not an in-and out trader as it held its shares through specific allegedly false and/or misleading disclosures during the Class Period in reliance on the alleged misrepresentations, and was harmed in connection therewith. Thus, the Dole Investor Group is not subject to any unique defense regarding the timing of its purchases.[6] *See Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975) ("[I]nterim corrective disclosures . . . do not necessarily bring predisclosure

---

[4] Likewise, Providence states that the Dole Investor Group did not explain its methodology. That is incorrect. *See* D.I. 15-2 (explaining the methodology used).

[5] Providence's authorities do support Providence's and the Dole Investor Group's arguments against the appointment of San Antonio Investors and Sutton for their fatal inability to show loss causation.

[6] The cases cited by Providence, Providence Opp. at 6-7, are distinguishable. In *Kops*, 2006 U.S. Dist. LEXIS 49713, contrary to Providence's misleading parenthetical representing that the court refused to credit losses "despite the allegation that a partial disclosure occurred before some of those sales," there the movant in question sold all of its shares before any of the disclosures alleged in the complaint and even if the non-pled disclosure purported by the movant was considered, that movant's losses were still less than the loss of the competing movants. *Id.*, at *19-*20; *cf. id.*, at *14 ("Under *Dura* principles, **unless a partial disclosure occurred** before the end of the Class Period, Joo has not suffered any loss as the result of Defendants' actions because Joo sold all of his shares before the truth was revealed.") (emphasis added). In *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011), like in *Kops*, the movant sold all of its shares before the alleged disclosures, and although the movant argued there was an additional partial disclosure, the court did not find the disclosure in question to have actually revealed any fraud to qualify as a partial disclosure. *Id.* at 240-42; *see also In re Bally Total Fitness Sec. Litig.*, No. 04-3530, 2005 U.S. Dist. LEXIS 6243, at *17-*18 (N.D. Ill. Mar. 15, 2005) ("Genesee may not be able to prove loss causation because it is an 'in-and-out' trader that purchased and then **sold all of its stock during the class period, many months before the alleged fraud was first revealed**.") (emphasis added). Further, in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009), the District Court certified a class, which included those who sold their shares before the truth was disclosed. *Id.* at 33. The Second Circuit held that those in-and-out traders could not establish loss causation because, unlike here with respect to the Dole Investor Group, the plaintiffs failed to connect the decline in the price of the shares to any corrective disclosure. *See id.* at 40-41. In *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428 (S.D. Tex. 2010), the court appointed both sets of movants as lead plaintiff, one set for the whole class and the other for a subclass, because it was concerned that their theories of the case were at odds and they argued for different class periods. *Id.* at 437-42.

purchasers into conflict with post-disclosure purchasers. Because both share an interest in maximizing overall inflation, the latter purchaser will no doubt strive to show a substantial market effect from disclosure of the lesser (or partial) causes of inflation . . .").[7] Thus, "[c]ourts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements . . ." *In re K-V Pharm. Co. Secs. Litig.*, No. 11-01816, 2012 U.S. Dist. LEXIS 62161, at *16-*18 (E.D. Mo. May 3, 2012) (lead plaintiff decision rejecting argument that the [movant's] trading activity after the partial first disclosure renders it incapable of adequately representing the class.") (citations omitted; collecting cases).[8]

## II. SAN ANTONIO INVESTORS AND SUTTON ARE NOT TYPICAL AND ARE SUBJECT TO DISABLING UNIQUE DEFENSES

As more fully explained in the Dole Opp., both San Antonio Investors and Sutton are subject to disabling unique defenses because they have no financial interest in the Action and

---

[7] *See also Blackie*, 524 F.2d at 903-04 ("the test is more than satisfied when a series of financial reports uniformly misrepresent a particular item . . . [T]he misrepresentations are 'interrelated, interdependent, and cumulative'; 'like standing dominoes … one misrepresentation . . . cause[s] subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous misstatements.'") (internal citation omitted).

[8] *See also Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, No. 07-2536, 2009 U.S. Dist. LEXIS 71653, at *21-*22 (C.D. Cal. Aug. 12, 2009) ("The Court also finds that the presence of partial corrective disclosures does not render Plaintiff to be an inadequate class representative. . . . While Plaintiff alleges that several partial corrective disclosures occurred throughout the Class Period . . . the market became fully aware of Defendants' misrepresentations and omissions" only at the end of the Class Period); *In re Tronox, Inc.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (finding a lead plaintiff candidate's "purchase of these shares after the partial disclosures does not render [the candidate] atypical or subject it to unique defenses"); *In re Recoton Corp. Secs. Litig.*, 248 F.R.D. 606, 619 (M.D. Fla. 2006) (rejecting the argument that because the plaintiffs "purchased the majority of their shares after the date of the first partial disclosure" they "are atypical of the class"); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501-02 (S.D. Tex. 2004) (finding that "courts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality"); *Lyons v. Scitex Corp.*, 987 F. Supp. 271, 275 (S.D.N.Y. 1997) ("Although persons who purchased stock prior to the partial disclosure may have slightly different interests than those who purchased after the partial disclosure, those differences do not rise to the level of [a] serious potential conflict of interest. . . .").

6

cannot demonstrate loss causation. Both were net buyers and both realized significant net profits trading in Dole stock during the Class Period. Dole Opp. at 5; *see also* Providence Opp. at 1, 2-5 (explaining that San Antonio Investors (with a profit of approximately $4.9 million) and Sutton (with a profit of approximately $40,000) are net financial gainers and cannot be appointed lead plaintiffs; citing cases). Additionally, unlike the Dole Investor Group, San Antonio Investors and Sutton actually were in-and-out traders who purchased most of their Dole shares after Defendants' last alleged artificially deflating misrepresentations and/or failed to hold their shares through a deflating misrepresentation. Accordingly, since nearly all of their purportedly "damaged shares" were acquired at an artificially depressed price and were never harmed by Defendants' fraud, Sutton and San Antonio Investors cannot meet the "in connection with," reliance[9] or loss causation requirements of a Section 10(b) and Rule 10b-5 claim. Dole Opp. at 6-14. Thus, these unique defenses to which San Antonio Investors and Sutton are subject render them both inadequate and atypical. Dole Opp. at 13-14 (citing cases).

Notably, San Antonio Investors do not claim to have suffered an economic loss as a result of Defendants' alleged misconduct. Dole Opp. at 9; *see also* San Antonio Opp. at 4 ("sold over 3.5 million Dole shares during the Class Period and, consequently, incurred substantial harm"). Sutton also fails to actually claim an economic loss. *See* Sutton Opp. at 2 ("Sutton [ ] sold 80,000 shares during the Class Period and therefore has a significant 'financial interest in the relief sought by the class'"); *Kops*, 2006 U.S. Dist. LEXIS 49713, at *12 ("the Court must

---

[9] Arbitrage may also be unable to show reliance because of the nature of its fund. *See, e.g., Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-07097, 2008 U.S. Dist. LEXIS 103148, at *12 (C.D. Cal. Nov. 13, 2008) ("An arbitrageur by definition takes advantage of inefficiencies between markets. Therefore, it may be that Argent relied on one market but not another because Argent believed one was inefficient relative to another. It could also be that Argent relied on a market or markets, as well as its own internal analysis of Countrywide's statements, to find an arbitrage opportunity.").

7

determine whether each claimed dollar amount constitutes a loss that could be caused by the alleged fraud"). Instead, San Antonio Investors argue that the financial interest should be measured simply by the raw number of shares sold during the Class Period without any regard for when those shares were purchased or at what price. This is incorrect. *See* Dole Opp. at 6-13.[10]

San Antonio Investors' reliance on a slip opinion from the Central District of California, San Antonio Opp. at 2, for its argument is misplaced. In *Basile v. Valeant Pharms. Int'l, Inc.*, No. 14-2004 (C.D. Cal.) (D.I. 28-1), not precedent here, there were two competing motions for lead, one motion was by two institutional investors and the other motion was by two individuals who proposed to be co-lead with the institutional investors. *Id.* at 1. Unlike here, there was also no dispute among the movants as to which had the largest financial interest. *Id.* at 2. The appointed pension funds' calculation of losses using the other movants' methodology constituted evidence of their millions of dollars more in losses. *See* Dkt. No. 23 on the *Basile* docket at 3. It is notable that, in *Basile*, counsel for the pension funds (Bernstein Litowitz Berger & Grossmann LLP, also counsel for San Antonio Investors here) despite disagreeing with the methodology used to calculate the financial interest, still calculated its interest using that criticized methodology for comparison purposes. Not only does San Antonio Investors not provide evidence of its claimed loss using the methodology employed by the Dole Investor Group, but it has refused to provide the Court with any loss figure. The explanation for such a refusal is that because San Antonio Investors are collectively in-and-out traders and net buyers, and rather than

---

[10] Even without engaging in "complicated damages analyses" and/or endorsing a particular methodology for quantifying the relevant damages, San Antonio Opp. at 5, it is unequivocal that there is no causal link between San Antonio Investors' purported financial interest and Defendants' fraud since, for nearly all of their Dole shares, they both paid and received an artificially deflated price and there was no intervening misstatement that further artificially deflated Dole's share price between the dates of their purchases and sales.

8

suffering losses collectively, realized significant net profits trading in Dole stock during the Class Period. *Id.*[11] Likewise, *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944 (N.D. Ill. 2007), San Antonio Opp. at 3, is also inapplicable. *See* Dole Opp. at 13 n.8 ("The *Levie* court, however, did not address the situation here where a proposed plaintiff purchased the shares after the alleged price-depressing misrepresentation was made and sold before the truth was revealed, and, thus, purchased and sold at similarly depressed prices, or where the would-be plaintiff handsomely profited from the alleged fraud."). Thus, San Antonio Investors' and Sutton's motions should be denied.[12]

## III. SAN ANTONIO INVESTORS IS NOT A PROPER PSLRA GROUP

As detailed in the Dole Opp., unlike the Dole Investor Group, San Antonio Investors is not a proper "group" within the meaning of that term under the PSLRA and, thus, even if it had the largest financial interest in the outcome, its motion should be denied.

Here, San Antonio Investors is comprised of four unrelated funds,[13] no details are

---

[11] Further, unlike here, *Basile* was a case under Section 14(e) and Section 20A of the Securities Exchange Act of 1934. *See* Dkt. No. 1 on the *Basile* docket.

[12] Sutton's alternative suggestion that it should be appointed co-lead plaintiff should also be denied for the same reasons.

[13] As explained in the Dole Opp., San Antonio Investors' members' mere status as institutional investors is irrelevant to its motion for appointment because it does not have the largest financial interest and, even if it did, it is not a proper group and is subject to disabling unique defenses. *See* Dole Opp. at 17 n.12 (citing cases). Notwithstanding its argument, Providence Opp. at 8 & n.6, the same applies to Providence. Moreover, Providence's "significant experience in litigating complex securities fraud class actions," Providence Opp. at 7-8, has no bearing here. Nothing in the PSLRA nor in Fed. R. Civ. P. 23 makes experience as a plaintiff in securities litigation a required qualification for appointment as lead plaintiff or as a class representative. *See, e.g.*, *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005) ("In sum, NJS is not entitled, under the Reform Act . . . to be appointed lead plaintiff simply . . . because it has the most investment or litigation experience. Rather, the statute presumes that the plaintiff with the largest financial stake in the litigation who satisfies the Rule 23 requirements will be the lead plaintiff."). Indeed, "[i]f financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff," *Cavanaugh*, 306 F.3d at 730 n.20, and if litigation experience was a requirement, the statute would have provided it (rather

provided about what, if any, pre-Dole litigation relationship existed between these funds or how, if at all, these various funds worked together previously,[14] and no explanation has been provided to explain the manner in which the members can operate as a cohesive "group" or monitor its multiple counsel. Thus, even if San Antonio Investors had a financial interest in the relief sought in this litigation, which it does not, and could otherwise demonstrate it satisfies the requirements of Rule 23, which with no recognized loss it cannot, it is ineligible to serve as lead plaintiff. Dole Opp. at 14-19.

## IV. THE COURT SHOULD APPROVE THE DOLE INVESTOR GROUP'S CHOICE OF COUNSEL

The Court should approve the Dole Investor Group's selection of Brower Piven as Lead Counsel and Rigrodsky & Long as Liaison Counsel. *See* Dole Memo at 8; Dole Opp. at 19.

## CONCLUSION

For all of the foregoing reasons, the Dole Investor Group respectfully requests that this Court enter an order (1) appointing it to serve as Lead Plaintiff; (2) approving its selection of Lead Counsel and Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

---

than limited it) as a qualification. Accordingly, highly sophisticated investors with extensive securities litigation experience are given no special advantage when seeking appointment as a lead plaintiff. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status").

[14] Notwithstanding its argument to the contrary, San Antonio Investors' previous work in this case (filing the initial complaint) and filing the Objection in the Court of Chancery is irrelevant to its suitability to be lead plaintiff here. Dole Opp. at 16 n.11 (citing case). Similarly, Providence's previous work in the Court of Chancery Action, Providence Opp. at 8, is also irrelevant, and, indeed, may subject it to unique defenses. *See* San Antonio Opp. at 11-13 ("there is substantial evidence that undermines Providence's adequacy to serve as Lead Plaintiff and demonstrates that Providence will face serious unique challenges that threaten to derail the prosecution of the Action."). Thus, its alternative suggestion that it should serve as co-lead should also be denied.

Dated: March 7, 2016                    RIGRODSKY & LONG, P.A.

*/s/ Brian D. Long*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel: (302) 295-5310
Fax: (302) 295-5310
Email: BDL@rl-legal.com

*Counsel for the Dole Investor Group and Proposed Liaison Counsel for the Class*

Charles J. Piven
Yelena Trepetin
BROWER PIVEN
  A Professional Corporation
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300
Email: piven@browerpiven.com
Email: trepetin@browerpiven.com

*Counsel for the Dole Investor Group and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2016, true and correct copies of the Reply Memorandum In Support Of The Motion Of The Dole Investor Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiffs' Choice Of Counsel were served via this Court's ECF system to all counsel of record as identified on the Notice of Electronic Filing (NEF), and electronically sent to those indicated as non-registered participants.

                                                             */s/ Brian D. Long*
                                                               Brian D. Long